# In the
# United States Court of Appeals
## for the Eighth Circuit

R.J. ZAYED, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR
THE OXFORD GLOBAL PARTNERS, LLC, UNIVERSAL
BROKERAGE FX, AND OTHER RECEIVER ENTITIES,

*Plaintiff-Appellant,*

v.

ASSOCIATED BANK, N.A.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the District of Minnesota, Minneapolis, No. 0:13-cv-00232-DSD.
The Honorable **David S. Doty**, Judge Presiding.

## REPLY BRIEF OF PLAINTIFF-APPELLANT

BRIAN W. HAYES
BRENTON A. ELSWICK
CARLSON, CASPERS, VANDENBURGH,
  LINDQUIST & SCHUMAN, P.A.
225 S. 6th Street, Suite 4200
Minneapolis, MN 55402
(612) 436-9600

KEITH A. VOGT
TAKIGUCHI & VOGT, LLP
1415 W. 22nd Street, Tower Floor
Oak Brook, IL 60523
(630) 975-5707

ROBERT P. GREENSPOON
FLACHSBART & GREENSPOON, LLC
333 N. Michigan Avenue
27th Floor
Chicago, IL 60601
(312) 551-9500

*Attorneys for Plaintiff-Appellant*

## ORAL ARGUMENT REQUESTED

 

# TABLE OF CONTENTS

I.    INTRODUCTION TO THE REPLY ........................................................1

II.   THE BANK OFFERS NO OBVIOUS ALTERNATIVE
      EXPLANATION   ........................................................................3

      A.    *Iqbal* Standards that the Bank Ignores ...................................4

      B.    Minnesota Law Includes a Duty of Inquiry for Banks, and
            Constructive Knowledge for Aiding and Abetting ............................7

            1.    Bank Duty to Inquire into Wrongful Diversion.........................8

            2.    Constructive Knowledge for Aiding-and-Abetting ...................9

      C.    The Well-Pleaded Facts Make Bank Knowledge of the Fraudulent
            Scheme Plausible.....................................................................12

      D.    The Well-Pleaded Facts Make the Bank's Substantial Assistance
            to the Fraudulent Scheme Plausible ...................................................20

III.  THE ALTERNATIVE GROUNDS ARE NOT PROPERLY RAISED.......21

IV.   *IN PARI DELICTO* DOES NOT BAR THE RECEIVER ...........................23

      A.    The *In Pari Delicto* Doctrine Does Not Apply As a Matter of
            Law   .........................................................................................23

            1.    Equity and Policy Considerations Foreclose the Defense ........23

            2.    Case Law Forecloses the Defense .............................................24

      B.    The *In Pari Delicto* Doctrine Should Not Apply on the
            Pleadings ...............................................................................29

V.    *RES JUDICATA* DOES NOT BAR THE RECEIVER .................................30

VI.   LEAVE TO AMEND SHOULD HAVE BEEN ALLOWED .....................34

i

Appellate Case: 13-3388     Page: 2     Date Filed: 03/05/2014 Entry ID: 4130084

VII.  CONCLUSION...............................................................................36

ii

Appellate Case: 13-3388     Page: 3     Date Filed: 03/05/2014 Entry ID: 4130084

# TABLE OF AUTHORITIES

*Am. Bank of St. Paul v. TD Bank, N.A.*,
   713 F.3d 455 (8th Cir. 2013) ...........................................................10, 11

*Arreola v. Bank of Am., N.A.*,
   2012 U.S. Dist. LEXIS 144765 (C.D. Cal. Oct. 5, 2012)....................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................*passim*

*Baker O'Neal Holdings, Inc. v. Ernst & Young LLP*,
   2004 U.S. Dist. LEXIS 6277 (S.D. Ind. Mar. 24, 2004) ....................................28

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).........................................................................23

*Briehl v. GMC*,
   172 F.3d 623 (8th Cir. 1999) ...............................................................35

*Britt v. Vernon*,
   2006 U.S. Dist. LEXIS 75128 (E.D. Cal. Oct. 2, 2006)....................................33

*Centra, Inc. v. Chandler Ins. Co. Ltd.*,
   2000 U.S. App. LEXIS 22609 (10th Cir. Sept. 7, 2000)....................................22

*Central Comm'y Church of God v. Ent & Imler CPA Group, PC*,
   2004 U.S. Dist. LEXIS 24339 (S.D. Ind. Nov. 24, 2004) ...................................28

*Christians v. Grant Thornton, LLP*,
   733 N.W.2 803 (Minn. Ct. App. 2007).........................................................24, 25

*Christopher v. Hanson*,
   2011 U.S. Dist. LEXIS 60201 (D. Minn. June 6, 2011)....................................10

*Colvin v. Dempsey-Tegeler & Co., Inc.*,
   477 F.2d 1283 (5th Cir. 1973) ...............................................................22

*Commod. Fut. Trading Comm'n v. Chilcott Portfolio Mgmt.*,
   713 F.2d 1477 (10th Cir. 1983) ............................................................31, 33

Appellate Case: 13-3388    Page: 4    Date Filed: 03/05/2014    Entry ID: 4130084

*Dickson v. Kittson*,
    77 N.W. 820 (Minn. 1899)....................................................................28

*Dottore v. The Huntington Nat'l Bank*,
    2014 U.S. Dist. LEXIS 16301 (N.D. Ohio Feb. 10, 2014)...................16

*El Camino Res. Ltd. v. Huntington Nat'l Bank*,
    712 F.3d 917 (6th Cir. 2013) ..............................................................18

*Estate of Allen v. CCA of Tenn., LLC*,
    2009 U.S. Dist. LEXIS 60015 (S.D. Ind. Jul. 14, 2009) .......................7

*Fine v. Sovereign Bank*,
    2011 U.S. Dist. LEXIS 57268 (D. Mass. May 27, 2011).......................9

*German-American Finance Corp. v. Merchants & Manufacturers'
State Bank of Minneapolis*,
    225 N.W. 891 (Minn. 1929)....................................................26, 27, 28

*Grad v. Associated Bank, N.A.*,
    801 N.W.2d 349 (Wis. App. 2011).......................................................32

*Grassmueck v. Am. Shorthorn Ass'n*,
    402 F.3d 833 (8th Cir. 2005) ..............................................................24

*Hays v. Pearlman*,
    No. 10-cv-1135, 2010 WL 4510956 (D.S.C. Nov. 2, 2010) ................29

*Housing Authority of Kaw Tribe of Indians v. City of Ponca City*,
    952 F.2d 1183 (10th Cir. 1991) ..........................................................22

*Jones v. Wells Fargo Bank, N.A.*,
    666 F.3d 955 (5th Cir. 2012) .......................................................*passim*

*In re Oakwood Homes Corp.*,
    340 B.R. 510 (Bankr. D. Del. 2006) .............................................. 29-30

*In re Phoenix Diversified Inv. Corp.*,
    439 B.R. 231 (Bankr. S.D. Fla. 2010) ................................................30

iv

*In re Student Finance Corp.*,
    2006 U.S. Dist. LEXIS 56759 (Bankr. D. Del. Aug. 10, 2006) ...........................29

*Iqbal. Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...................................................................5, 6, 17

*Kelley v. College of St. Benedict*,
    901 F. Supp.2d 1123 (D. Minn. 2012)..................................................................27

*Knauer v. Jonathon Roberts Financial Group, Inc.*,
    348 F.3d 230 (7th Cir. 2003) ...................................................................27, 28, 29

*Kulinski v. Medtronic Bio-Medicus, Inc.*,
    108 F.3d 904 (8th Cir. 1997) ...............................................................................22

*Lamson v. Towle-Jamieson Inv. Co.*,
    245 N.W. 627 (Minn. 1932)..................................................................................33

*Lawrence v. Bank of America, N.A.*,
    455 F. App'x 904 (11th Cir. 2012) .......................................................................19

*Littlefield v. City of Afton*,
    785 F.2d 596 (8th Cir. 1986) ...............................................................................35

*Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*,
    2014 U.S. App. LEXIS 2588 (8th Cir. Feb. 11, 2014) .........................................30

*Merrill v. Zimmerman*,
    188 N.W. 1019 (Minn. 1922)...............................................................................28

*Myatt v. RHBT Financial Corporation*,
    370 S.C. 391 (S.C. App. 2007) .............................................................................29

*O'Melveny & Myers v. FDIC*,
    512 U.S. 79 (1994) ...............................................................................................26

*Porter v. Ariz. Dept. of Corr.*,
    2010 U.S. Dist. LEXIS 47601 (D. Ariz. May 13, 2010) .......................................7

v

*Public Pension Fund Grp. v. KV Pharma. Co.*,
    679 F.3d 972 (8th Cir. 2012) .......................................................... 34-35

*Reil v. Benjamin*,
    584 N.W.2d 442 (Minn. App. 1998)..............................................31, 32

*Richardson v. Reyes*,
    2013 U.S. Dist. LEXIS 5418 (N.D. Cal. Jan. 14, 2013)........................7

*Scholes v. Lehman*,
    56 F.3d 750 (7th Cir. 1995) .......................................................26, 27

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................6

*State by Head v. Aamco Automatic Transmissions, Inc.*,
    199 N.W.2d 444 (1972) .....................................................................24

*Swift Cnty. Bank v. United Farmers Elevators*,
    366 N.W.2d 606 (Minn. App. 1985)....................................................8

*Varga v. U.S. Bank Nat'l Ass'n*,
    952 F. Supp. 2d 850 (D. Minn. 2013),
    *appeal docketed*, No. 13-2709 (8th Cir. Aug. 2, 2013) .......................10

*Witzman v. Lehrman, Lehrman & Flom*,
    601 N.W.2d 179 (Minn. 1999)................................................9, 10, 12

## Rules & Statutes

Fed R. Civ. P. 8      ...........................................................................4, 5

Fed R. Civ. P. 9(b)      ...........................................................................4, 5

D. Minn. Local Rule 7.1(j)......................................................................35

Appellate Case: 13-3388    Page: 7    Date Filed: 03/05/2014 Entry ID: 4130084

# I.    INTRODUCTION TO THE REPLY

Appellee Associated Bank's ("the Bank's") effort to preserve the judgment rests on four flawed legal arguments:

- Minnesota law never imposes a duty of inquiry on a bank in the face of suspicious conduct (*i.e.*, "red flags" do not plausibly suggest knowledge) (Bank Br. 4, 14, 25, 27, 33, 45);

- Minnesota law always forbids constructive knowledge from establishing aiding and abetting liability (Bank Br. 19-20);

- a pleading of "knowledge" is always an ignorable "formulaic" legal conclusion, while in contrast allegations supporting "knowledge" must be pleaded with particularity (Bank Br. 22-24, 32); and

- a bank's falsification of remitter information on its own official checks in support of a Ponzi scheme can never, as a matter of law, support a bank's scienter in a case involving fraud (Bank Br. 30-31).

The Bank is wrong on all four counts. The Bank has not correctly stated the law. The Bank raises no legal bar to reversal.

Even if the Bank were right about the law, the Complaint still plausibly alleges knowledge and substantial assistance. For example, the Bank's arguments do not address several key facts asserted in the Complaint, including:

1

- the Bank knew that Trevor Cook had no signatory authority over the account that diverted $79 million in victims' funds, but granted (and actively participated in) his multiple self-dealing requests (a non-routine banking practice) (A46 ¶10, A67-70 ¶¶53-56, A77 ¶72(O), A80 ¶77, A100);

- the Bank lent an on-site deposit (ODM) machine to the Scheme in violation of its own policies (another non-routine banking practice) (A60-61 ¶43, A77 ¶72(L)); and

- the Bank Vice President's brother was part of the Ponzi Scheme (a long-term close relationship making knowledge of the Scheme highly likely) (A56-57 ¶¶34-35).

The Bank's Brief instead accuses the Receiver of misstating the content of its Complaint. In each case where the Bank makes this accusation (*e.g.*, Bank Br. 25-30), the Bank is wrong.

Contrary to the Bank's refrain, the Complaint does state document falsification allegations (A43 ¶4, A44 ¶7, A57 ¶36, A58-59 ¶38, A60-61 ¶43, A72 ¶61, and A73 ¶64), Bank-authorship of those falsified documents (A57 ¶36), Bank advice to the Scheme on how to avoid detection (A75-76 ¶72, 72(D)), and Bank knowledge of Swiss government actions that obliterate any plausible claim that the Scheme's activities were believed

legitimate (A71-72 ¶58). The Bank presents no "obvious alternative explanation" to knowledge and substantial assistance.

Instead, the Bank's Brief accuses the Receiver of hyperbole. (Bank Br. 31). The facts are shocking. But that does not make them hyperbole. From the first document falsification at account-opening (A57 ¶36), to the final wrongful diversion of $101,000 *after* Bank officials became alarmed at news reports of the Scheme (A74 ¶66), no plausible explanation fits the facts but knowledge of and assistance to the fraud, if not complicity.

Unable to defend the judgment as-entered, the Bank auditions alternative grounds for affirmance. Not only do they lack merit on their own terms, but the grounds selected by the Bank (*in pari delicto* and *res judicata*) require a cross appeal. If successful, they would enlarge the Bank's rights under the judgment. The Bank has not invoked this Court's jurisdiction to hear fallback arguments, and if it did, those arguments lack merit.

## II.    THE BANK OFFERS NO OBVIOUS ALTERNATIVE EXPLANATION

The Bank's Brief faults the Receiver's inadequate "evidence" that "establishes" Bank liability. (Bank Br. 24, 39). This argument uncovers the Bank's true goal. It seeks treatment of the Complaint under standards more germane to review of summary judgment or a jury verdict. The Bank

3

therefore would deprive the Receiver of the assumption of truth and reasonable inferences drawable from a Complaint.

The Bank is wrong about the legal standards under Rules 8 and 9(b). It is also wrong about Minnesota banking law and aiding-and-abetting law, wrong about the content of the Complaint, and wrong about the plausible inferences that the Complaint permits.

### A. *Iqbal* Standards that the Bank Ignores

The Bank misapplies Supreme Court and Eight Circuit standards of review. It argues that to "show that Associated had actual knowledge of . . . the Cook/Kiley Ponzi Scheme . . ., the Receiver must make those showing [sic] with the particularity required by Rule 9(b)." (Bank Br. 14). The Bank quotes a 2008 pre-*Iqbal* district court decision for the statement that "a plaintiff does not satisfy Rule 9(b) by alleging a bank's actual knowledge of a fraud based on allegations of the bank's suspicions or ignorance of obvious 'red flags' or warning signs indicating the fraud's existence." (Bank Br. 37). The Bank therefore imposes a particularity requirement on allegations of knowledge.

The Bank's application of Rule 9(b) violates Supreme Court law. Rule 9(b) does not apply to allegations of knowledge. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). While the Bank pays lip service to the statement

4

from *Iqbal* that Rule 8 (and not Rule 9(b)) applies to allegations of knowledge (Bank Br. 23), the Bank's actual arguments seek some unspecified, but unapproachably high, level of particularity.

Regarding those Rule 8 standards, this Court has already explained *See Iqbal*. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596-97 (8th Cir. 2009) (not cited by the Bank). There, this Court underscored that a complaint need not "rule out potential lawful explanations for appellees' conduct." *Id.* at 596. That means that the Receiver need not allege facts that "rule out" the Bank's assertion that it knew nothing and assisted no one. Instead, when the alleged facts are not what one would expect from lawful conduct, but are what one would expect from a party perpetrating the complained-of violation, the plaintiff's inference is plausible. *See id.* at 597. Put otherwise, this Court holds that an "inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged." *Id.*[1]

---

[1] In *Iqbal* itself, the Supreme Court noted that wrongful intent in the creation of the post-9/11 "roundup" policy might have been a reasonable inference if the complaint had contained a factual allegation that the Attorney General condoned beatings that Arab Muslim endured while in custody. *Iqbal*, 556 U.S. at 683.

5

It is only in the exceptional case "where there is a concrete, 'obvious alternative explanation' for the defendant's conduct – that a plaintiff may be required to plead additional facts tending to rule out the alternative." *Id*. The Bank cites where *Iqbal* holds that "a plaintiff cannot proceed if his allegations are merely consistent with a defendant's liability" (Bank Br. 21-22, quoting *Iqbal*, 556 U.S. at 678). But the Bank ignores that this condition applies only to that exceptional case where an "obvious alternative explanation" exists. The Bank also ignores the other side of the coin: that "a *defendant* is not entitled to dismissal if the facts are merely consistent with *lawful* conduct." *Braden*, 588 F.3d at 597 (emphasis added, citations omitted). Thus a complaint is properly dismissed "only when defendant's plausible alternative explanation is so convincing that a plaintiff's explanation is *implausible*." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (emphasis in original).

The Bank makes one additional legal misstatement. To avoid the fact that the Complaint alleges explicitly that "Associated Bank had actual knowledge of the fraud" (*e.g.*, A48 ¶13, A75 ¶72, A78 ¶73), the Bank describes this factual allegation as a "conclusory label" or "threadbare recital" of an aiding-and-abetting element (Bank Br. 22-24, 32). While a proper analysis does not assume the truth of "conclusions" that merely

6

restate the elements of a cause of action, this only applies to *legal* conclusions. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). After *Iqbal*, if the scienter element of the cause of action is itself a factual allegation, it receives an assumption of truth. *Richardson v. Reyes*, 2013 U.S. Dist. LEXIS 5418, at *4 (N.D. Cal. Jan. 14, 2013) ("Plaintiff states defendants acted with knowledge of, or deliberate indifference to, his medical needs . . . . These facts are more than mere legal conclusions."); *Porter v. Ariz. Dept. of Corr.*, 2010 U.S. Dist. LEXIS 47601, at *11 (D. Ariz. May 13, 2010) ("[That] it was generally known that inmates could gain entry to any cell by placing a broom handle under the cell door . . . . is not a mere legal conclusion, but a factual allegation. . . ."); *Estate of Allen v. CCA of Tenn., LLC*, 2009 U.S. Dist. LEXIS 60015, at *8-9 (S.D. Ind. Jul. 14, 2009) ("[Alleging] 'knowledge of the substandard medical care . . . [goes] beyond providing mere 'legal conclusions' and [] instead provide[s] 'sufficient factual matter.'").

## B. Minnesota Law Includes a Duty of Inquiry for Banks, and Constructive Knowledge for Aiding and Abetting

The Bank also tries to defend the judgment with incorrect statements of Minnesota law.

7

### 1.     Bank Duty to Inquire into Wrongful Diversion

If the Bank advances one central theme, it is that a bank in Minnesota supposedly has no duty to inquire into, police, or monitor, the affairs surrounding its depositor's accounts. (Bank Br. 4, 14, 25, 27, 33, 45). For this, the Bank quotes *Swift Cnty. Bank v. United Farmers Elevators*, 366 N.W.2d 606, 609 (Minn. App. 1985) (*e.g.*, Bank Br. 4, 33). But the Bank ends the quotation early. The full quotation demonstrates that banks in Minnesota do have fraud-detecting duties:

> Banks have no general duty to monitor their depositors' checking accounts. [Citation omitted.] The Minnesota Supreme Court has stated:
>
> > We cannot say that a bank ought, much less that it has a <u>duty, to inquire minutely into the affairs of the depositor's checking account.</u> * * * The bank is bound to honor the customer's checks ***unless it has at the time actual or constructive knowledge that the customer is then and there and by means thereof intending to wrongfully divert the money***.

*Swift Cnty. Bank*, 366 N.W.2d at 609 (double-underline quoted by the Bank, bold italics emphasis added by Receiver).[2]

---

[2] *Swift Cnty.* explains that the "wrongful diversion" of funds in a prior case "involved the limited duty of a bank to prevent a fiduciary from misappropriating trust funds." *Id.* This criterion applies to the facts recited in the Receiver's Complaint. The Complaint explains that Account #1705 held investor funds, and the Bank knew it (even though mislabeled to avoid scrutiny). (A59 ¶39, A76, ¶72(I)). Where a bank has a duty to investigate signs of fraud in a fiduciary account, the "account in question need not be

Appellate Case: 13-3388     Page: 15     Date Filed: 03/05/2014 Entry ID: 4130084

The Bank seeks to avoid the reasonable inference that it complied with this Minnesota state law duty to inquire and therefore had knowledge. Regardless of how other jurisdictions treat factual allegations that a bank knew that there were "red flags" of suspicious conduct (*i.e.*, the "constructive knowledge" of "wrongful diversion"), in Minnesota such "red flags" over a fiduciary account trigger a duty to inquire. If it *investigated*, then it *knew*. It is that simple. Nothing could be more plausible, or reasonable, to establish a chain of facts leading to a well-supported "actual knowledge" allegation. Assumed compliance with its *state* duties renders moot all of the Bank's efforts to downplay its undisputed *federal* duties to investigate under the BSA/AML. This state law duty is uncoupled to any secrecy obligation, unlike the Bank's characterization of the BSA/AML.

## 2. Constructive Knowledge for Aiding-and-Abetting

The Bank's effort to eliminate constructive knowledge from an aiding-and-abetting analysis under Minnesota law has even less merit. The Receiver showed in its Principal Brief that *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179 (Minn. 1999), recited and applied a constructive knowledge analysis when analyzing an aiding-and-abetting claim. (Principal

---

*labeled* a fiduciary account. It is sufficient that the bank knew that it was used as such." *Fine v. Sovereign Bank*, 2011 U.S. Dist. LEXIS 57268, at *19 (D. Mass. May 27, 2011) (emphasis in original).

Appellate Case: 13-3388    Page: 16    Date Filed: 03/05/2014 Entry ID: 4130084

Br. 27-28). The Receiver cited multiple Minnesota and other decisions applying this constructive knowledge standard after *Witzman*. (Id. at 28-29). This standard allows a claim of aiding and abetting without a showing of "actual knowledge" if the primary tortfeasor's conduct was "clearly tortious or illegal."

The Bank denies that *Witzman* adopted constructive knowledge for Minnesota aiding-and-abetting law. (Bank Br. 19-20). It states that "courts applying Minnesota law have *uniformly* held that actual knowledge is the lynchpin; constructive knowledge will not suffice." (Bank Br. 20, emphasis added, internal quotations and alterations omitted). Ironically, the Bank cites its own counterexample, proving itself wrong. It cites one of the cases the Receiver cited that applied the constructive knowledge standard, albeit finding the facts insufficient. *See Christopher v. Hanson*, 2011 U.S. Dist. LEXIS 60201, at *34 (D. Minn. June 6, 2011) (holding primary tortfeasor's conduct "not so clearly illegal or unlawful so as to justify imputing constructive knowledge," citing *Witzman*).[3]

Nor is the Bank correct that *this* Court "confirmed that 'actual knowledge' is the controlling standard." (Bank Br. 19). The Bank cites *Am.*

---

[3] The one contrary authority that the Bank cites to support its position is currently on appeal in this Court. *See Varga v. U.S. Bank Nat'l Ass'n*, 952 F. Supp. 2d 850 (D. Minn. 2013), *appeal docketed*, No. 13-2709 (8th Cir. Aug. 2, 2013).

Appellate Case: 13-3388    Page: 17    Date Filed: 03/05/2014 Entry ID: 4130084

*Bank of St. Paul v. TD Bank, N.A.*, 713 F.3d 455 (8th Cir. 2013). *Am. Bank* involved an appeal of a plaintiff's jury verdict rendered under an "actual knowledge" jury instruction, where the defendant-appellee sought an *even higher* scienter standard. *Am. Bank*, 713 F.3d at 468. The plaintiff did not, and had no need to, present the constructive knowledge issue to this Court. This Court was careful to note that its decision was "in light of the issues presented to the jury in a particular case." *Id*.

When finally addressing the alleged facts under a constructive knowledge standard, the Bank dissembles. It states, "there is no allegation that the conduct here was a *facial* breach of a duty – nor could there be, given the Receiver's contentions that the perpetrators of the fraud purposefully concealed their wrongful conduct." (Bank Br. 20). This argument fails on many levels. First, it ignores that "illegal" conduct may also give rise to constructive knowledge, not solely "clearly tortious" conduct. The Ponzi Scheme here was undisputedly criminal. Second, the wrongful diversion of funds alleged in the Complaint was "clearly tortious," and indeed open and notorious to the Bank who managed the account, even though (through its auspices) members of the public were shrouded from the truth. Finally, the terms "clearly tortious" and "facial breach of duty" in

11

*Witzman* referred not to how easily detectible the breach was, but to its undeniably tortious nature to one in possession of all of the facts.

As shown above, the Bank relies on erroneous statements of law to defend the judgment. It offers no defense of the judgment (except for a single sentence on constructive knowledge, debunked above) if the Court holds that the Receiver's view of the law is correct. For example, the "actual knowledge of the fraud" allegation becomes entitled to an assumption of truth, such knowledge allegations become unburdened from any particularity requirement, the Bank's duty to inquire about red flags gives rise to inferences of actual knowledge of what they meant, and the fact that the underlying Scheme was illegal satisfies the constructive knowledge scienter standard under *Witzman*.

But as the next sections show, even if the Bank were right about the pleading standards and Minnesota law, the Court should still reverse.

### C. The Well-Pleaded Facts Make Bank Knowledge of the Fraudulent Scheme Plausible

As already mentioned, the Bank does not try to give key pleaded facts any alternative explanation in its Brief. It ignores the well-pleaded fact that Trevor Cook had no signatory authority over the main conduit account for the fraud, #1705, and that the Bank knew this but let him control it anyway. (A46 ¶10, A67-70 ¶¶53-56, A77 ¶72(O), A80 ¶77). The Bank, through

12

Sarles, even actively worked with Cook to transfer $4,700,000 in investor funds to Cook's own accounts. (A68-69 ¶55, A69-70 ¶56, A100). The Bank ignores its deep relationship with Cook and the other fraudsters, particularly Vice President Sarles's brother's employment by the Scheme, coupled with Sarles's visits to the headquarters. (A56-57 ¶¶34-35). It ignores the Bank's violation of its own policies to send an ODM machine to an address not associated with the account. (A60-61 ¶43, A77 ¶72(L)). The Bank instead goes on attack against the Receiver.

The Bank argues that the Receiver's Principal Brief misstates its own scienter-related allegations. (Bank Br. 25-30). For example, the Bank states that the assertion that the Bank "advised the fraudsters on how to avoid detection" finds "no support in the complaint, which states only that Associated advised its customers of regulatory requirements." (Bank Br. 27). Not so. Paragraph 72 lists "(D) Providing advice to Shadi Swais, Cook and Kiley on how to avoid detection by recommending that an account in the name of the fictitious Crown Forex LLC be opened instead of the foreign domiciled Crown Forex, SA." (A76, ¶72(D)). This was among the factors showing the Bank's intent "to avoid detection under the implementing regulations of the BSA/AML." (A75, ¶72).

Appellate Case: 13-3388    Page: 20    Date Filed: 03/05/2014 Entry ID: 4130084

The Bank also argues that it cannot locate allegations "that it 'falsified' . . . documents" (Bank Br. 25). But Paragraphs 4 and 7 (among others) make this crystal clear. (A43 ¶4 ("needed . . . a bank that would . . . create account documentation containing false information"), A44 ¶7 ("Associated Bank falsified the account application . . ."), *see also* A57 ¶36, A58-59 ¶38, A60-61 ¶43, A72 ¶61, and A73 ¶64).

The Bank goes on to state that "the complaint does not specify *who* filled out the registration form that failed to designate the accounts as holding investor funds." (Bank Br. 30). Once again, not so. Paragraph 36 states, "The account documentation *prepared by Associated Bank* contained several falsehoods and omissions." (A57, ¶36 (emphasis added)).

The Bank makes similar unsupported attacks about "ambiguous language as to who provided or completed the material containing the suite number" used to legitimize the residential bedroom-office of the Scheme (Bank Br. 29-30), again an aspect of the Bank's conduct used to avoid detection (A75-76, ¶¶72, 72(A)). For that distortion as well, Paragraph 36 states, "The account documentation *prepared by Associated Bank* contained several falsehoods and omissions." (A57, ¶36 (emphasis added)).

The Bank also tries to tar the Receiver with overstating the Complaint concerning the February 2009 liquidation of Crown Forex, SA by Swiss

Appellate Case: 13-3388    Page: 21    Date Filed: 03/05/2014 Entry ID: 4130084

authorities. The Bank alleges there to be "*no* foundation in the complaint" for the Receiver's appellate argument that the Bank "knew in February 2009" of the liquidation. (Bank Br. 26, emphasis in original). The Bank is wrong again. Paragraph 58 states that there were "a number of telephone conferences between Sarles and the Ponzi scheme principals apparently on this very subject." (A70-71 ¶58). The relevant paragraph refers to and cites exhibits that include not only the February 2 Google alert mentioned in the Bank's Brief, but also those ignored in the Bank's Brief, such as the February 26 "important" call calendar entry between Sarles and Cook, shortly after the February 23 liquidation announcement. (*Id*.). All of these facts are assumed true at this stage.

Aside from lobbing incorrect accusations, the Bank also tries to fashion an "obvious alternative explanation" of its falsified remitter lines on official cashier's checks. (Bank Br. 30-31). The Bank does not deny that false remitter lines helped the Scheme by creating the wrong impression of segregated accounts. It argues instead that "it is the *customer*, not Associated, that supplies the remitter information for a check – and that information is of no legal significance." (Bank Br. 30). The Bank supposedly "could well have believed that the remitter descriptions were of internal significance to the purchaser of the check." (Bank Br. 31). But as a

15

recent decision held, the Bank is wrong as a matter of law. *See Dottore v. The Huntington Nat'l Bank*, 2014 U.S. Dist. LEXIS 16301, at *12-21 (N.D. Ohio Feb. 10, 2014) (Bank "falsif[ying] the remitter line to masquerade the true source of the funds" on cashier's check makes "plausible" the bank's "actual knowledge of, and participation in, the alleged fraud . . . beyond mere aiding and abetting."). *Dottore* rejected the very argument the Bank makes here, *i.e.*, that "the remitter description is the prerogative of the customer similar to that of a memo line on a check." *Id.* at *18, *20-21.[4]

The Bank's other "obvious alternative explanations" are all easily dispatched. For example, the Bank argues that Cook's account transfers out of #1705 to himself (including a $600,000 cash withdrawal and the $1.7 million unwound-then-corrected transfer that each raised "red flags" in internal documents) do not make the Bank's awareness of the fraud plausible. (Bank Br. 27 n.9). It states, "investment advisors are often entitled to compensate themselves from client funds." (*Id.*). But this argument ignores multiple background facts that the Bank knew, including that Cook did not have signatory authority over the account in the first place. (A75-77, ¶¶72, 72(O)). It is certainly not an "obvious" explanation that the Bank was

---

[4] The bank in *Dottore* admitted that false-remitter allegations on cashier's checks "supports an aiding and abetting claim," and instead tried (unsuccessfully) to refute its probativeness of even higher scienter, such as for a direct fraud claim. *Id.*

blind to skullduggery, merely because Cook was known as an "investment advisor." And, explanations that are merely consistent with the defense's view do not justify dismissal. *Braden*, 588 F.3d at 597. This particular attempt is not even consistent. For this explanation to be believable, the Bank would have had to code #1705 as an "investment account," which it did not. (A76, ¶¶72, 72(J)). The Bank enabled depletion of something coded as an *operating* account.

The Bank also repeats Vice President Sarles's statement of the circumstances surrounding opening #1705 without a Secretary of State LLC form: that he "did not remember to follow-up with Kiley" to get the missing documentation. (Bank Br. 29). This misses the point. The scienter inferences arise not just from opening an account with incomplete information against federal rules and Bank policies, but also from the contemporaneous lies. For example, the account opening documents mention that someone had provided documents "from a state registration information website." (A44, ¶7). But that was impossible – Crown Forex LLC did not exist as a registered entity. Even the Bank's appellate arguments do not defend this Bank-authored statement as true. Sarles also received reminders in 2009 to follow up. (A44-45, ¶8). That, too, contradicts and renders implausible Sarles's cover story about not remembering to follow up on documentation.

17

More to the point, this is grist for discovery. As an "alternative explanation," Sarles's story is not so obviously true as to make implausible his knowledge of the Scheme (where his brother worked and whose headquarters he visited).

Unable to fashion any viable "alternative explanations," the Bank resorts to inapposite and unpersuasive legal authorities. The Bank first advances a "parade of horribles" argument. Citing a Michigan decision, the Bank argues that giving any consideration to its disregard of "red flags" would impose near-strict liability for the torts of a bank's client, leading to a devastating impact on commercial relationships. (Bank Br. 32). But banks already monitor their customers, at least to comply with federal "know your customer" obligations under the BSA/AML. Banks still thrive. And, as discussed above, the Bank has Minnesota law backwards. The duty to inquire in Minnesota already exists to prevent wrongful diversion of funds, and it is not for this Court to entertain overruling state law.

All of the Bank's authorities are distinguishable. The Bank's champion case is *El Camino Res. Ltd. v. Huntington Nat'l Bank*, 712 F.3d 917 (6th Cir. 2013) (Bank Br. 33-34). But the Bank overlooks that *El Camino* (a summary judgment decision) turned on the lack of "evidence" that the bank knew the nature of the fraudsters' transactions. There, the bank

18

did not know that the scheme dealt in nonexistent inventory, and there was no dispute that the bank did not know how the scheme operated or with whom it did business. *Id.* at 923. The allegations here, by contrast, recite facts that the Bank knew how the Ponzi Scheme and its Currency Program was to operate, knew that no investment funds ever left account #1705 to go to Crown Forex, SA (rather, the funds went to Cook personally), and continued to allow the Scheme to thrive after Swiss government liquidation of Crown Forex, SA made any claim of belief in legitimacy impossible.

Likewise, *Lawrence v. Bank of America, N.A.*, 455 F. App'x 904 (11th Cir. 2012) (Bank Br. 34-35) lacks key facts that are present here. In *Lawrence*, there was no close connection to the scheme (like there was between Vice President Sarles and his brother), no visits to the scheme's headquarters, no allegations of bank falsification of numerous documents, and no allegation that the main fraudster who drained the accounts lacked the legal or account-signatory authority (as Cook did).

Nor does the Bank succeed in distinguishing the Receiver's authority, such as *Arreola v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 144765 (C.D. Cal. Oct. 5, 2012). The Bank alleges that *Arreola* found knowledge by the bank only because a branch manager accepted bribes from the fraudsters. (Bank Br. 38). Not so. The decision clearly holds that "aside from" the

19

branch manager's actions, the "red flags" permitted a plausible inference that others in the bank had "actual knowledge." *Id.* at *8-9. The Bank's other attempted distinctions of Receiver authority on pages 38-39 of its Brief are equally flimsy. The Bank states that the defendants in those cases were all insiders of, or had inside information about, the fraud's perpetrators. (Bank Br. 38). That is not a distinction but a commonality. A bank possesses the ultimate inside information about the schemes it enables – the very accounts that are their lifeblood.

### D. The Well-Pleaded Facts Make the Bank's Substantial Assistance to the Fraudulent Scheme Plausible

Nearly all of the facts that establish knowledge also establish a plausible claim of "substantial assistance." For example, no matter how often the Bank characterizes its relationship with the Ponzi Scheme as "arms-length" and "commercial," involving only "routine professional services" and mere "inaction" (Bank Br. 42-43), this characterization defies the facts. The Complaint alleges a multitude of activities by the Bank that defy any explanation other than as helping the Ponzi Scheme thrive.

Pleaded facts that the Bank simply ignores include: Bank visits to the fraudsters' headquarters, falsification of account opening documents (addresses and registration statuses, account-type), falsification of remitter lines on official Bank cashier's checks to lend the false veneer of segregated

accounts, provision of detection avoidance advice to avoid the BSA/AML, provision of an ODM machine against Bank policies, and – central to all of this aid and succor – affording Cook complete power over and access to Account #1705 notwithstanding his lack of legal signatory authority. The climax of it all – ignored in the pages of the Bank's Brief relating to substantial assistance (pages 42-45) – is the "crime and fraud prevention department" unwinding a $1.7 million transfer orchestrated by Sarles (A100, A105) from #1705 to one of Cook's personal accounts, so it might be redone "correctly" to allow him to walk out of the Bank with $600,000 in cash.

Under Minnesota law, these allegations establish substantial assistance if they amount to atypical or nonroutine banking services. The Bank does not attempt to posit an "alternative explanation" of any of these acts that would make them seem somehow "routine." To say that "all the Receiver alleges in this case" is the "mere maintenance of a bank account, receipt or transfer of funds, or repeated executions of wire transfers" (Bank Br. 42) is not only untrue. It strains the limits of permitted advocacy.

## III.  THE ALTERNATIVE GROUNDS ARE NOT PROPERLY RAISED

The Receiver moved for a determination that the Bank's two "alternative grounds for affirmance" are not part of this appeal. There is no cross appeal. The Receiver argued that such defenses, if successful, would

Appellate Case: 13-3388     Page: 28     Date Filed: 03/05/2014 Entry ID: 4130084

enlarge the Bank's rights under the judgment. The Bank opposed, arguing that the cross appeal rule does not apply to those defenses. The Clerk referred the motion to the merits panel. Thus, the Receiver incorporates by reference his prior motion and arguments in support.

The Receiver and Bank agree that the effect is black or white. There is no grey area. If the issues are proper "alternative grounds for affirmance," it is improper to raise them in a cross appeal, and vice versa. Thus, if courts treat these issues as proper for a cross appeal, then they must be improper as "alternative grounds." That is indeed the case. Courts treat these two issues as proper in a cross appeal, and/or improper as "alternative grounds." *Centra, Inc. v. Chandler Ins. Co. Ltd.*, 2000 U.S. App. LEXIS 22609, at *46-47 (10th Cir. Sept. 7, 2000) (addressing *in pari delicto* cross appeal); *Colvin v. Dempsey-Tegeler & Co., Inc.*, 477 F.2d 1283, 1292 (5th Cir. 1973) (refusing to address *in pari delicto* without cross-appeal); *see also Kulinski v. Medtronic Bio-Medicus, Inc.*, 108 F.3d 904, 908-09 (8th Cir. 1997), *reh'g granted on other* grounds, 112 F.3d 368 and 143 F.3d 1117 (addressing *res* judicata cross appeal); *Housing Authority of Kaw Tribe of Indians v. City of Ponca City*, 952 F.2d 1183, 1195-96 (10th Cir. 1991) (refusing to address *res judicata* without cross appeal because it would expand appellee's rights under the judgment to non-litigants).

Appellate Case: 13-3388    Page: 29    Date Filed: 03/05/2014 Entry ID: 4130084

Without waiving this motion, the Receiver proceeds to address the lack of merit in these two defenses.

## IV. *IN PARI DELICTO* DOES NOT BAR THE RECEIVER

Despite the fact-bound and equitable nature of the affirmative defense, the Bank argues it is entitled to *this* Court (a court of error) affirming dismissal in the first instance based on the *in pari delicto* doctrine. The Bank's arguments misunderstand this defense. None of the Bank's authorities involves a federal equity receiver asserting high-scienter torts against wrongdoers who directly participated in and benefited from a Ponzi scheme fraud.

### A. The *In Pari Delicto* Doctrine Does Not Apply As a Matter of Law

#### 1. Equity and Policy Considerations Foreclose the Defense

The doctrine of *in pari delicto* serves equitable and public policy purposes. Where investment fraud is involved, the Supreme Court cautioned that a court should only apply *in pari delicto* when "preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). Minnesota law is in harmony. "A paramount public interest in the enforcement of some statutes

23

may call for judicial intervention in favor of one wrongdoer against the other in order to effectuate the enforcement of a public policy which overrides considerations of a benefit inuring to a wrongdoer." *State by Head v. Aamco Automatic Transmissions, Inc.*, 199 N.W.2d 444, 448 (1972) (cited by the Bank). Thus, a court should not apply *in pari delicto* in situations where a "private right of action will be an ever-present threat to deter anyone contemplating [unlawful] business behavior. . . ." *Id.* (applying defense in government consumer protection suit only after confirming that no private right of action would be harmed).

These policy directives impel the Court not to preclude suit by the last private entity – the Receiver – with any reasonable chance of holding the Bank accountable for its wrongful actions. Such a bar would be the death of equity. No party would remain who might recover from the Bank for its part in the Scheme.

## 2.     Case Law Forecloses the Defense

Not surprisingly, the Bank unearthed no authority on point. The Bank relies heavily on cases applying *in pari delicto* to bar suits by bankruptcy trustees (*e.g.*, Bank Br. 46-47, citing *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833 (8th Cir. 2005); and *Christians v. Grant Thornton, LLP*, 733 N.W.2 803 (Minn. Ct. App. 2007)). The Bank calls *Christians* "particularly

24

instructive," stating that a bankruptcy trustee like the one in *Christians* is "akin to a federal equity Receiver." (Bank Br. 47, 48 n.19). The Bank is wrong.

While both bankruptcy trustees and receivers are court-supervised persons who replace the original management of an entity during court proceedings, the comparison ends there. The powers and reach of a receiver are different from, and broader than, those of a bankruptcy trustee. The Bankruptcy Code hard-codes by statute that a trustee stands in the exact same shoes as the debtor as of the filing of a petition in bankruptcy, with no exceptions. No such statutory provision limits federal equity receivers.

The Fifth Circuit explains why bankruptcy trustees and receivers get different treatment under *in pari delicto*. *See Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 965-68 (5th Cir. 2012). Describing the decisions barring relief by a bankruptcy trustee as "plainly distinguishable," the *Jones* court declined to apply *in pari delicto* principles to a receiver bringing a tort action against a bank. *Id.* at 968. This was because bankruptcy trustee powers are defined under Section 541(a) of the Bankruptcy Code, "which limits the debtor estate to interest of the debtor as of the commencement of the case." *Id.* (internal quotation omitted) (citing numerous cases). In contrast, the powers of receiverships are determined under state law. *Id.* at 966 n.11

25

(citing *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 83 (1994)). Thus, by federal statute, a trustee is considered to be the same "wrongdoer" for all purposes as the bankrupt entity. *Id.* But this principle will not apply to receivers. *Jones* also held that the doctrine is not for the benefit of either party but for the public, applying it only if it will better serve public policy. *Id.* at 966-67 (citations omitted).

In allowing the receivership's tort claims against the bank, *Jones* followed the Seventh Circuit's reasoning in *Scholes v. Lehman*, 56 F.3d 750, 754-55 (7th Cir. 1995). *Scholes* noted that the defense of *in pari delicto* "loses its sting when the person who is in pari delicto is eliminated." *Id.* at 754. In effect, the appointment of a receiver liberates the corporate entity from its status as an "evil zombie" of the wrongdoer management, reversing the equities of an otherwise-applicable defense. *Id.* Minnesota law is in accord with *Scholes*. "[W]hen an act has been done in fraud of the rights of the creditors of the insolvent corporation, the receiver may sue for their benefit, even though the defense set up might be valid as against the corporation itself." *German-American Finance Corp. v. Merchants & Manufacturers' State Bank of Minneapolis*, 225 N.W. 891, 893 (Minn.

26

1929).[5] The lower court itself, in another Ponzi scheme case, adopts the reasoning of *Scholes* for federal equity receivers. *Kelley v. College of St. Benedict*, 901 F. Supp.2d 1123, 1129 (D. Minn. 2012) ("receiver is not precluded from asserting claims that would be barred by a corporation's own fraud had the corporation brought the claims on its own behalf.").

*Jones* also distinguishes the Bank's primary authority: *Knauer v. Jonathon Roberts Financial Group, Inc.*, 348 F.3d 230 (7th Cir. 2003). Like the unsuccessful defendant in *Jones*, the Bank argues that *Knauer* limited the earlier *Scholes* decision to preclusion of the defense against receivers asserting anything other than fraudulent transfer actions. (Bank Br. 50). However, *Knauer* did not distinguish *Scholes* this way. *Knauer* allowed *in pari delicto* to succeed against a receiver whose claims relied just on the *relationship* with the defendants (*i.e.*, *respondeat superior* liability for the acts of, and failure to supervise, Ponzi-scheming employees). *Id.* at 237. But as *Jones* points out, *Knauer* "was decided under Indiana law, and reasoned that the equities of that case favored application of *in pari delicto* because the defendants were neither directly involved in the embezzlements at issue

[5] The Bank argues that *German-American* is limited to the fraudulent conveyance context. (Bank Br. 49). The Bank is wrong. *German-American* concerned fraudulent bank recordkeeping calculated to mislead bank examiners and others about the nature of certain accounts. *Id.* at 534-35 (an "undisclosed agreement" not to collect on notes placed onto the bank's balance sheet).

Appellate Case: 13-3388    Page: 34    Date Filed: 03/05/2014 Entry ID: 4130084

nor benefited from them." *Jones*, 666 F.3d at 968 n.12 (citing *Knauer*, 348 F.3d at 236-37). Here, the Receiver alleges the very direct involvement and benefit that both *Jones* and *Knauer* distinguish from the facts that controlled the outcome in *Knauer*.[6]

The Bank's other cases are equally inapposite. The Bank relies on *Merrill v. Zimmerman*, 188 N.W. 1019 (Minn. 1922) and *Dickson v. Kittson*,[7] 77 N.W. 820, 821 (Minn. 1899), to counter the holding in *German-American* (quoted above) that receivers liberate corporations from the fraud of their wrongdoers. The Bank cites these cases to argue that a receiver stands in the shoes of the receivership entity. (Bank Br. 48). However, *Merrill* was not an *in pari delicto* decision. The Bank also misreads *Dickson*. While a receiver was a party in that case, the carryover of defenses applied between an assignee-for-the-benefit-of-creditors and the relevant assignor – *not* because a receiver coincidentally stepped in. *Id.* ("[A]n assignee for the benefit of creditors stands in no better position than his assignor, and what

---

[6] District courts of the Seventh Circuit also limit *Knauer* to its facts. *Central Comm'y Church of God v. Ent & Imler CPA Group, PC*, 2004 U.S. Dist. LEXIS 24339, at *30-31 (S.D. Ind. Nov. 24, 2004); *Baker O'Neal Holdings, Inc. v. Ernst & Young LLP*, 2004 U.S. Dist. LEXIS 6277, at *25-26 (S.D. Ind. Mar. 24, 2004). Those courts distinguish *Knauer* from the types of facts the Complaint alleges here.

[7] Referred to by the Bank as *Dickson v. Baker*.

Appellate Case: 13-3388     Page: 35     Date Filed: 03/05/2014 Entry ID: 4130084

would be a defense against the latter will be a good defense against the former . . . .").

The Bank also cites South Carolina decisions – *Myatt v. RHBT Financial Corporation*, 370 S.C. 391 (S.C. App. 2007), and *Hays v. Pearlman*, No. 10-cv-1135, 2010 WL 4510956 (D.S.C. Nov. 2, 2010) (Bank Br. 49 n.21). Each applies *Knauer* because of the scenario *Jones* noted for *Knauer* to apply – no allegation of direct involvement in and benefit from the fraud.

Thus, the Bank's *in pari delicto* defense fails as a matter of law. The Bank incorrectly applies bankruptcy trustee cases to a receivership, fails to recognize the liberating qualities of receiverships under Minnesota law, and fails to address the factual distinctions (direct participation and benefit) that remove this case from the scope of its cited authority.

## B.     The *In Pari Delicto* Doctrine Should Not Apply on the Pleadings

Even if the Court found some merit in the Bank's *in pari delicto* argument, it should not rule on the defense. Since it involves the Court's equitable consideration – including the level and amount of wrong perpetrated by the defendant compared to the pre-receivership plaintiff – courts generally do not consider the defense on a motion to dismiss. *In re Student Finance Corp.*, 2006 U.S. Dist. LEXIS 56759, at *6 (Bankr. D. Del.

Appellate Case: 13-3388     Page: 36     Date Filed: 03/05/2014 Entry ID: 4130084

Aug. 10, 2006) (discovery needed); *In re Oakwood Homes Corp.*, 340 B.R. 510, 536 (Bankr. D. Del. 2006). Here, under the Complaint's allegations, the Bank's own wrongdoing led to at least $79 million of fraudulent investment. Courts generally decide the defense on summary judgment or at trial, not on the pleadings. *In re Phoenix Diversified Inv. Corp.,* 439 B.R. 231, 243 (Bankr. S.D. Fla. 2010) ("factbound apportionment of responsibility [] not appropriate [] at this stage"). As in these cases, discovery may show that Bank personnel were in fact (at least constructively) corporate insiders with the Receivership Entities. Making this more plausible is that Vice President Sarles is brother to one of the Scheme's employees. The Bank's deep entanglement with the fraud, and that of its officers, merits discovery before the Court entertains the *in pari delicto* defense. *See also Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 2014 U.S. App. LEXIS 2588, at *10-11 (8th Cir. Feb. 11, 2014) (where "it would be beneficial for the district court to consider this issue in the first instance," remanding for further proceedings).

## V.   *RES JUDICATA* DOES NOT BAR THE RECEIVER

The Bank also fails to support *res judicata*. The Bank argues that the failure of certain investors in the Wisconsin action to plead a viable cause of action bars the Receiver from doing so. The Bank thus argues inconsistently.

30

On the one hand, it argues that the investors should be the ones who sue because the Receiver and the investors are distinct entities. But when the investors fail in their suit (as certain ones did in the Wisconsin action), the Receiver should be barred from proceeding based on the Bank's allegation of "privity."

In a Ponzi scheme case, a "judgment on the merits in one investor action would have no collateral estoppel effect on any investor (or the Receiver) who was not a party to that action." *Commod. Fut. Trading Comm'n v. Chilcott Portfolio Mgmt.*, 713 F.2d 1477, 1486 (10th Cir. 1983). The Bank cites no authority to the contrary.

The Bank's cited cases demonstrate the Receiver's lack of privity with prior investor-claimants. In *Reil v. Benjamin*, 584 N.W.2d 442 (Minn. App. 1998), Reil's employer brought a subrogation action alleging negligence against a party who had injured Reil in a car accident. When Reil sued, he was found in privity with his employer. The Court held that "privity requires that the estopped party's interests have been sufficiently represented in the first action so that the application of collateral estoppel is not inequitable." *Id.* at 445. Reil and his employer met the requirements of privity because "Reil took the witness stand in the subrogation case and gave sworn testimony regarding the facts surrounding the accident," "took steps toward

Appellate Case: 13-3388     Page: 38     Date Filed: 03/05/2014 Entry ID: 4130084

consolidating his case with [his employer's]," and "operat[ed] under the same legal theory – negligence – on which issue the jury made a determination." *Id.* The *Reil* court distinguished a prior case that found a lack of privity on the ground that the prior case involved parties who "had no right to be heard at oral argument" and "did not have any control over the proceedings." *Id.*[8]

Here, no privity attaches because the Receiver had no control over, no right to be heard in, and no participation in the prior investor lawsuit. Nor is the Receiver asserting complete identity of legal theories, since the investors asserted pure negligence and an aiding an abetting claim based on intentional conduct, whereas the Receiver asserts four distinct aiding and abetting torts based on "knowing" conduct. *Compare Grad v. Associated Bank, N.A.*, 801 N.W.2d 349, 349-52 (Wis. App. 2011) with Complaint ¶¶70- 98. While the Bank argues that *res judicata* "does not turn on identity of *legal* theories" (Bank Br. 53), that flatly contradicts *Reil*'s application of the defense based on a plaintiff who "operat[ed] under the same legal theory – negligence." *Reil*, 584 N.W.2d at 445.

---

[8] In light of *Reil*, the Bank errs to argue that "it is *always* the case that application of the privity doctrine bars relitigation by someone who did not participate in the prior litigation." (Bank Br. 54). Reil was barred, and he participated in the prior litigation.

32

The Bank illogically supports its privity argument by advancing the converse proposition – that if the Receiver wins *this* case, then the Scheme's Ponzi investors would be found in privity with the Receiver. This proposition is irrelevant to proving the Receiver's privity with outcomes reached by *prior suing investors*. It is also both unripe and incorrect. *See Chilcott*, 713 F.2d at 1486. The Bank's cited case (*Lamson v. Towle-Jamieson Inv. Co.*, 245 N.W. 627 (Minn. 1932)) involved a receiver who expressly represented the interests of a creditor, making a later party who "as a creditor [] now claims" a right against the same defendant in privity with the receiver. *Id.* at 628. Likewise, the Bank's other authority fails to support its creditors-in-privity-with-the-Receiver argument (the converse of the question actually presented by the Bank): *Britt v. Vernon*, 2006 U.S. Dist. LEXIS 75128 (E.D. Cal. Oct. 2, 2006). In *Britt*, the court found that the later-barred party was in privity with a litigating receiver because it had provided affidavits and live testimony in support of the receiver, was the only creditor named in the receiver's complaint, and the settlement by the court was approved on condition that the later party be named a creditor of the receivership. *Id.* at *21-22. None of these factors exists here.

Even if the Bank's argument had some merit, only the value of the losing claims of the *Grad* investors would be barred as a matter of equity.

Appellate Case: 13-3388     Page: 40     Date Filed: 03/05/2014 Entry ID: 4130084

The Receiver would still be permitted to proceed to recover the pool of tort damages reflecting the rest of the Bank's damage to the Receivership Entities

## VI. LEAVE TO AMEND SHOULD HAVE BEEN ALLOWED

The Bank's arguments confirm the error in denial of leave to amend. It argues that the presence alone of Paragraph 74 fatally flaws the Complaint. (Bank Br. 39-41). But it then argues that the lower court did not abuse its discretion to deny the Receiver's request for leave to amend it out. (Bank Br. 56-62). The Bank cites no authority that would bestow discretion on a trial court, at the earliest phase of a case, to forbid an improvement to a pleading where the effect would ostensibly bring it over the line into sufficiency.[9]

The Bank would also brush aside the lenient amendment standards of Rule 15 because the lower court's decision occurred post-judgment. (Bank Br. 56-59). But this Court *requires* consideration of the Rule 15 factors during such post-judgment decisionmaking after a Rule 12(b)(6) dismissal. (Principal Br. 48-49, citing *Public Pension Fund Grp. v. KV Pharma. Co.*,

---

[9] The Receiver actually contends that this aspect of the amendment should not have been necessary; an alternative pleading of a lower level of scienter does not negate allegations of a higher level, since reasonable inferences must favor the Receiver at this stage. (Principal Br. 41-42, citing case). It is only the Bank's argument that it found a "gotcha" in Paragraph 74, and the lower court's acceptance of that argument, that puts the matter in issue.

Appellate Case: 13-3388    Page: 41    Date Filed: 03/05/2014 Entry ID: 4130084

679 F.3d 972, 987 (8th Cir. 2012)). The Bank's Brief ignores *Public Pension Fund Grp.* and its holding.

The Bank mis-cites its own authority to justify the other aspect of denial of leave to amend. The Receiver also sought to add claims on behalf of specific Receivership Entities that did not require "aiding and abetting" pleading (*e.g.*, negligence and breach of fiduciary duties to Kiley when allowing Cook to deplete Kiley's accounts, such as #1705). (Dkt. No. 52). The Bank calls this a "whole new legal theory" such that a "valid reason" is required for "failure to present the theory at an earlier time." (Bank Br. 59). But the Bank misquotes its own authorities, which limit this restriction to *post-summary judgment* requests for leave to amend. *E.g.*, *Littlefield v. City of Afton*, 785 F.2d 596, 610 (8th Cir. 1986) ("valid reason" for delay required for *post-summary judgment* request to amend to shift theory of case). Plus, the Bank's authority that forbids "new theories" applies to new allegations in support of the *same* counts, not a proposal to add *different* counts on behalf of a *different* plaintiff. *E.g.*, *Briehl v. GMC*, 172 F.3d 623, 629 (8th Cir. 1999) (class action based on latent car defects dismissed because of speculative damages, "new theory" to add "conclusory statements that some of the Plaintiffs have suffered an accident and traded in their vehicles at a loss.").

35

Finally, the Bank's argument the Receiver should have provided more detail (Bank Br. 61-62) overlooks that Local Rule 7.1(j) restricts letter briefing to two pages. Had the lower court granted the request in the letter brief, the next action would have been the filing of a formal "motion to reconsider," which would have attached the detailed draft amended complaint.

## VII. CONCLUSION

For all of these reasons, and those in the Principal Brief, the judgment should be reversed.

Respectfully Submitted,

/s Robert P. Greenspoon
*Counsel of Record*
Robert P. Greenspoon
**Flachsbart & Greenspoon, LLC**
333 N. Michigan Ave., 27th FL
Chicago, IL 60601
Telephone: (312) 551-9500
Email: rpg@fg-law.com

Brian W. Hayes
Brenton A. Elswick
**Carlson, Caspers, Vandenburgh,**
  **Lindquist & Schuman, P.A.**
225 S. 6th Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600
Email: hayes@carlsoncaspers.com
Email: belswick@carlsoncaspers.com

36

Keith A. Vogt
**Takiguchi & Vogt, LLP**
1415 W. 22nd Street, Tower Floor
Oak Brook, Illinois 60523-20211550
Telephone: (630) 975-5707
Email: kvogt@takiguchiandvogt.com

Appellate Case: 13-3388    Page: 44    Date Filed: 03/05/2014 Entry ID: 4130084

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document, including all headings, footnotes, and quotations, but excluding summary of the case, the table of contents, table of authorities, any addendum containing statutes, rules or regulations, and any certificates of counsel, contains 7,995 words, as determined by the word count of the word-processing software used to prepare this document, specifically Microsoft Word 2007 in Times New Roman 14 point font, which is no more than 8,000 words permitted by Court Order entered on February 18, 2014 to file an over length brief.

Dated:  March 5, 2014.

/s Robert P. Greenspoon

Appellate Case: 13-3388    Page: 45    Date Filed: 03/05/2014 Entry ID: 4130084

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the reply brief in non-scanned PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

/s Robert P. Greenspoon

Appellate Case: 13-3388    Page: 46    Date Filed: 03/05/2014 Entry ID: 4130084

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 5, 2014, an electronic copy of the Reply Brief of Plaintiff-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that the following participants in this case are registered CM/ECF users and that service of the Reply Brief will be accomplished by the CM/ECF system:

| | |
|---|---|
| Paul Whitfield Hughes | Charles F. Webber |
| Alex C. Kakatos | FAEGRE & BAKER |
| MAYER & BROWN | 2200 Wells Fargo Center |
| 1999 K Street, N.W. | 90 S. Seventh Street |
| Washington, DC 20006-1101 | Minneapolis, MN 55402-3901 |
| | Email: chuck.webber@faegrebd.com |

/s Robert P. Greenspoon

Appellate Case: 13-3388    Page: 47    Date Filed: 03/05/2014 Entry ID: 4130084